SCOTT E. BRADFORD, OSB #062824
United States Attorney
District of Oregon
**NICOLE M. HERMANN, 126353**
nicole.hermann@usdoj.gov
Assistant United States Attorney
1000 SW Third Avenue, Suite 600
Portland, OR 97204-2902
Telephone: (503) 727-1000
Attorneys for United States of America

### UNITED STATES DISTRICT COURT

### DISTRICT OF OREGON

### PORTLAND DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **3:26-cr-00068-AB** |
| **v.** | |
| **ODELL ADAMS,** | **GOVERNMENT'S MOTION TO REVOKE RELEASE ORDER** |
| **Defendant.** | |

The United States respectfully moves this Court to review the order of release entered by the Magistrate Judge for defendant Odell Adams on May 19, 2026, and order detention following a hearing. Defendant poses a serious danger to the community and a risk of nonappearance, and no condition or combination of conditions will reasonably assure the safety of the community or his appearance for future proceedings in this district. The government separately and simultaneous to this motion, filed a Motion to Stay Release Order and respectfully requests a hearing where the government will ask the Court to revoke the release order.

### I.    FACTUAL BACKGROUND

Defendant is charged by indictment with two counts of violating 18 U.S.C. § 922(g)(1): felon in possession of a firearm. The indictment alleges that Defendant possessed two different

**Government's Motion to Revoke Defendant's Release**                                                  **Page 1**

firearms on two separate dates after sustaining previous felony convictions for unlawful use of a weapon with a firearm and felon in possession of a firearm.

The charged conduct is part of a recent and escalating pattern of firearms, drugs, and traffic violations. The following is a summary of the facts and defendant's history that is most important for this Court's de novo review.

### a. Defendant's Prior History

Defendant was previously convicted in this district in 2010 for felon in possession of a firearm (case number 3:09-cr-279). That conviction stemmed from a 2009 incident where defendant was alleged to have pointed a firearm at two individuals inside a tavern and fled as law enforcement arrived. Defendant received a 110-month sentence and was released from custody in March 2018. U.S. Probation reports from the period defendant was on supervised release suggest probation was working with defendant on a plan to address substance use and mental health concerns until his arrest on new charges a few months later.

By November of 2018, defendant was back in state and then federal custody after being arrested for a shooting that occurred in October 2018. Defendant was later acquitted of federal felon in possession charges but convicted in state court of unlawful use of a weapon with a firearm for the same incident (see Multnomah County Circuit Court case number 18-cr-73436, of note, that case is currently on appeal). During the pendency of the state case, the defendant was released from custody for approximately one month before his pretrial release was revoked for failure to comply with conditions of release. Following his conviction, defendant received a 21-month prison sentence and was released from custody onto supervision in 2022.

Defendant was later charged and convicted of violating a no contact order and misdemeanor Harassment in September 2022 in Washington County, which stemmed from an

**Government's Motion to Revoke Defendant's Release**                    **Page 2**

April 2022 domestic violence incident. As a result of that conviction, defendant was ordered to complete a multi-week domestic violence intervention treatment program. State probation report(s) from 2023 indicate defendant attended a total of 4 of the minimum requirement of 36 sessions in the treatment program over a nine month period, which included repeated attempts by the probation officer to engage with defendant, re-enroll him in the program after three separate terminations, and encourage defendant to complete his probation requirements despite repeated statements by the defendant that he was not interested in participating or complying. Ultimately, defendant's probation was revoked in April 2024.

### b. *Factual Background of Counts Charged in Indictment*

On April 13, 2025, Portland Police Bureau (PPB) Officers stopped a vehicle driven by the defendant for a number of traffic violations. Defendant, the driver, had a suspended license and pulled the vehicle into the driveway of a residence unknown to him before attempting to walk away from the stop. Defendant was argumentative with officers trying to complete the traffic stop. A tow was ordered for the vehicle and as officers approached the vehicle, a convertible with the top down, officers could see a firearm visible in the backseat of the vehicle on top of a bag. The firearm was retrieved and determined to be a Pietro Beretta 9mm handgun. Defendant was taken into custody and DNA was obtained from the firearm. A state lab report issued in March 2026 found defendant could not be excluded as a contributor to the DNA mixture obtained from the firearm. Defendant was charged with felon in possession in Multnomah County Circuit Court following his arrest in April 2025 and was released from custody. Defendant failed to appear twice during the pendency of that case, in July 2025 and again in January 2026. Defendant was later charged federally for this incident which forms the basis of Count 1 of the indictment.

**Government's Motion to Revoke Defendant's Release**                    **Page 3**

On February 4, 2026, defendant was again the subject of a traffic stop after PPB Officers observed traffic violations and stopped defendant's vehicle. Defendant was found to have no license or insurance and issued a traffic citation. Defendant left the scene on foot, but was later re-contacted and arrested after the officer located approximately 29 grams of methamphetamine in a hidden compartment of the vehicle during an inventory search. Defendant was booked and released and failed to appear for his arraignment in Multnomah County the following morning. That case remains pending in state court.

Finally, On February 15, 2026, defendant was yet again stopped by PPB Officer(s) after exiting a vehicle and crossing the street outside of a designated crossing area. The officer who approached defendant ordered defendant to stop but he refused, continuing to walk away with a female companion. After repeated orders to stop and the arrival of additional officers on scene, defendant attempted to run before being taken into custody. A firearm fell out of defendant's waistband area during the scuffle and when recovered, was determined to be a Taurus 9mm handgun. A later search of defendant's jacket also revealed approximately 22 grams of fentanyl powder. Defendant was initially charged in state court and released on bail before later being arrested on the indictment in this case, where this incident is the basis for the allegations in Count 2.

Taken together, these incidents show why release conditions cannot reasonably manage the risk. This is not a single constructive-possession allegation. It is a repeated pattern of loaded firearms, drugs, failures to appear, probation violations, concealment, and continued firearm possession even after prior law-enforcement contacts and pending firearm cases.

/ / /

/ / /

**Government's Motion to Revoke Defendant's Release**                                          **Page 4**

## II.     PROCEDURAL POSTURE

On April 8, 2026, defendant appeared before a Magistrate Judge for his initial appearance and arraignment. Defendant did not seek release at that appearance and was detained without prejudice and leave to seek review of detention at a later date. ECF No. 7. The defendant later sought review of detention and appeared before the Magistrate Judge on May 13, 2026, requesting release to a treatment bed. ECF No. 10. The government opposed release and moved for continued detention based on danger to the community and risk of nonappearance. *Id*.  On May 19, 2026, the Magistrate Judge ordered Defendant released on conditions including release directly to a treatment bed at the Oregon Change Clinic once a bed becomes available. ECF No. 11. The government immediately moved to stay the release order in a motion filed simultaneously with this motion. ECF No. 12.

The government now seeks de novo review of the release order. The government is prepared to proceed to a hearing without delay and relies on the proffer made to the Magistrate Judge, the police reports and criminal-history information summarized below, and any additional information presented at the review hearing.

## III.     LEGAL STANDARD

Review of a magistrate judge's release order is *de novo*.  *United States v. Koenig*, 912 F.2d 1190, 1192-93 (9th Cir. 1990).  The Court, however, "is not required to start over in every case, and proceed as if the magistrate's decision and findings did not exist." *Id*. at 1193.  Rather, the court should "review the evidence before the magistrate and make its own independent determination whether the magistrate's findings are correct, with no deference." *Id*.

The Bail Reform Act provides that defendants shall be detained pending trial where "no condition or combination of conditions will reasonably assure the appearance of the person as

required and the safety of any other person and the community." 18 U.S.C. § 3142(e). The government bears the burden of establishing risk of flight by a preponderance of the evidence and dangerousness by clear and convincing evidence. *See United States v. Aitken*, 898 F.2d 104, 107 (9th Cir. 1990); *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986).

18 U.S.C. § 3142(g) sets forth the statutory factors to consider: (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a minor victim; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including the person's character, physical and mental condition, family and community ties, employment, financial resources, past criminal conduct, history relating to drug or alcohol abuse, and supervision status at the time of the current offense; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release.  18 U.S.C. § 3142(g).

Finally, the Federal Rules of Evidence do not apply in pretrial detention proceedings. Fed. R. Evid. 1101(d)(3); 18 U.S.C. § 3142(f).  Accordingly, both the government and the defense may present evidence by proffer or hearsay.  *Winsor*, 785 F.2d at 756; *see also United States v. Bibbs*, 488 F. Supp. 2d 925, 925-26 (N.D. Cal. 2007).

IV.    **NO CONDITIONS CAN REASONABLY ASSURE DEFENDANT'S APPEARANCE AS REQUIRED OR PROTECT THE COMMUNITY FROM THE DANGER POSED BY DEFENDANT'S RELEASE.**

This Court cannot fashion any combination of conditions that would reasonably assure defendant's appearance or protect the community. Defendant's recent conduct shows repeated firearm possession, drug possession, traffic violations, violations of court orders, failures to appear, and efforts to conceal firearms from law enforcement. The problem is not that defendant has lacked clear conditions or hasn't had the opportunity to seek treatment; it is that the most important conditions—do not possess firearms, obey court orders, appear in court—have already

**Government's Motion to Revoke Defendant's Release**                              **Page 6**

been imposed or tested, and defendant has repeatedly failed to comply. Defendant's history and characteristics and the nature of defendant's current offenses provide defendant both with the means and the incentive to flee.

Each of the relevant statutory factors weighs in favor of detention.

### a.   The Nature and Circumstances of the Offenses

The first factor—the nature and circumstances of the offense charged—contemplates consideration of not only the specific acts and charges alleged in the indictment, but also the potential penalty that may be imposed if the person is convicted.  *See, e.g., United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008); *United States v. Townsend*, 897 F.2d 989, 995 (9th Cir. 1990) (noting defendants faced respectively penalties of 35 and 70 years if convicted).

The first factor strongly favors detention. Defendant is charged with possessing a firearm as a convicted felon on two separate occasions over a 10-month period. The charged offenses involve first, a loaded firearm in a vehicle, and most recently, a loaded firearm on defendant's person. This is not passive possession. It is loaded-gun possession by a prohibited person already on pretrial release for another firearm case, not to mention in warrant status for an arrest and new felony charge 11 days prior. The broader history of defendant's background, prior firearm possession, probation violations, and refusal to follow court orders demonstrates a pattern, and that pattern matters. Defendant has shown that neither the law, nor court orders, nor pending state cases, nor active warrants, deter him from possessing firearms.

### b.   The Weight of the Evidence

The second factor is the weight of the evidence.  Although § 3142(g)(2) specifically enumerates weight of the evidence as a consideration in determining release, the Ninth Circuit has held that it is to be afforded less weight than the other statutory factors.  *See Townsend*, 897

**Government's Motion to Revoke Defendant's Release**                                        **Page 7**

F.2d at 994; *Winsor*, 785 F.2d at 757.  The weight of the evidence is, however, an important and relevant consideration in the Court's evaluation of whether a defendant "will fail to appear or will pose a danger to any person or to the community. *United States v. Motamedi*, 767 F.2d 1403, 1408 (9th Cir. 1985).

Here, the weight of the evidence is significant. In April 2025, officers found a firearm in the vehicle defendant was driving and defendant's DNA was found on the firearm. In February 2026, while in warrant status from an arrest 11 days prior, defendant is again detained by police, and a firearm drops directly from defendant's person during the contact. The weight of the evidence therefore reinforces the central detention concern: defendant knowingly armed himself despite being prohibited from possessing firearms, despite pending firearm matters, and despite active warrants.

The strength of the evidence also increases defendant's incentive to avoid further proceedings. Defendant faces federal prosecution yet again for possessing a firearm on two different occasions. Where, as here, the evidence of defendants' guilt is strong, it provides "a considerable incentive to flee." *United States v. Millan*, 4 F.3d 1038, 1046 (2d Cir. 1993); *see also Motamedi*, 767 F.2d at 1408; *United States v. Palmer-Contreras*, 835 F.2d 15, 18 (1st Cir. 1987) (where "the evidence against defendants is strong, the incentive for relocation is increased").

### c. The History and Characteristics of the Defendant

This factor also weighs heavily in favor of detention. Defendant's criminal history includes felony assault, drug offenses, domestic violence, firearms offenses, and prison sentences. The criminal history record reflects past cycles of probation violations and revocations and recent instances of failures to appear. Most important, defendant's recent history

**Government's Motion to Revoke Defendant's Release** **Page 8**

shows escalating firearm and drug conduct, not stale criminal history. He allegedly possessed loaded firearms in April 2025 and February 2026; he allegedly combined firearms with fentnayl; and he allegedly attempted to walk away from law enforcement and evade contact. The conditions that matter most—do not possess firearms, obey court orders, appear in court—have already been tested and have failed.

### d. Danger to the Community

The charged felony involves possession of two firearms, so the detention hearing was properly held under 18 U.S.C. § 3142(f)(1)(E). Once the hearing is properly authorized, the Court may consider whether detention is necessary to protect the safety of any other person and the community under 18 U.S.C. § 3142(e) and (g).

The danger posed by release is specific, recurring, and serious. Defendant repeatedly possessed loaded firearms despite felony convictions and firearm prohibitions. He combined guns with drugs: in his first February arrest suspected methamphetamine was located and a felony possession charge is pending. In his second February arrest he is alleged to have possessed a firearm and a notable quantity of fentanyl.

The Court simply cannot craft a clearer condition that will protect the community than what the law has already imposed. Defendant has repeatedly violated that prohibition. Conditions depend on voluntary compliance. The record shows defendant simply refuses to comply.

The Bail Reform Act does not require the Court to wait for further harm before acting. This record shows a concrete risk of future harm, not speculation. It also shows a risk that cannot be managed through ordinary supervision because defendant's dangerousness flows directly from his repeated noncompliance with the exact orders and prohibitions that pretrial supervision would necessarily require.

**Government's Motion to Revoke Defendant's Release**                    **Page 9**

*e.* ***The Proposed Conditions of Release are Inadequate***

The conditions of release imposed by the Magistrate Judge will not reasonably assure defendant's appearance or protect the community—nor could any realistic set of restrictions do so in these circumstances. Defendant's proposed conditions all depend on the same thing: voluntary compliance with treatment and the conditions put in place by pretrial supervision. But the record shows that defendant has repeatedly failed to comply with the very restrictions that matter most. He was already prohibited from possessing firearms, yet he repeatedly possessed loaded firearms. He was already subject to court orders and pending firearm cases, yet he continued to arm himself. He has been on supervision previously on several occasions, with UA, housing, and domestic violence treatment conditions and he was not only unable to comply but refused to do so. While substance abuse and mental health treatment are important resources and certainly services from which the defendant could benefit, a structured treatment setting requires defendant's compliance, willingness to engage, and still cannot prevent him from obtaining or hiding yet another firearm. A no-firearms condition merely repeats a prohibition defendant has repeatedly ignored. Drug treatment does not address the immediate danger posed by loaded firearms, firearm concealment, and noncompliance with court orders. The issue is not whether the Court can impose strict conditions or even conditions that would benefit the defendant in the long-run; it is whether those conditions can reasonably be expected to work for this defendant. On this record, they cannot.

## V.    CONCLUSION

Defendant has repeatedly possessed loaded firearms despite felony convictions, firearm prohibitions, pending cases, warrants, and court orders. His recent conduct shows escalating danger, drug involvement, failures to appear, and an inability or unwillingness to comply with

the very conditions that pretrial release would require. No condition or combination of conditions will reasonably assure defendant's appearance or the safety of the community. The government respectfully moves this Court to revoke the Magistrate Judge's release order and detain defendant pending trial.

Dated: May 19, 2026.                    Respectfully submitted,

                                        SCOTT E. BRADFORD
                                        United States Attorney

                                        /s/ Nicole M. Hermann
                                        **NICOLE M. HERMANN, OSB #126353**
                                        Assistant United States Attorney